[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner filed a pro se habeas corpus petition on January 24, 2001, said petition being amended on July 16, 2001. The amended petition makes the following claims: 1) that a preliminary hearing and a parole revocation hearing both did not afford the petitioner rights guaranteed under the Connecticut statutes and both the United States and Connecticut constitutions; 2) that the Board of Parole hearing that resulted in the forfeiture of statutory good time credits did not afford the petitioner the fundamental rights of an inmate in accordance with Connecticut statutes, both the United States and Connecticut constitutions, as well as Department of Correction Administrative Directive 9.5; and 3) that the Department of Correction, Records Department, has given the petitioner an illegal sentence. Am. Pet., at 2-3. The petitioner has also filed an Application for an Order of Mandamus in Aid of Pending Action, which seeks the petitioner's immediate release from custody.[1]
The petitioner is a sentenced prisoner confined to the custody of the Commissioner of Correction pursuant to the following relevant mittimuses:
 1. A mittimus issued on September 1, 1988, in docket number CR96-56083 by the Superior Court, Hartford, sentencing the petitioner to sixteen (16) years for violation of General Statutes § 53a-70 (a), and five (5) years for violation of General Statutes § 53a-95 (a), to run concurrent with each other, for a total effective sentence of sixteen (16) years; Pet'r Ex. C;
 2. A mittimus issued on March 24, 1994, in docket number CR94-53589 by the Superior Court, Tolland, sentencing the petitioner to one (1) year for violation of General Statutes § 53a-174a, to run consecutive to any prior sentences. Pet'r Ex. F.
The respondent warden, in accordance with General Statutes § 53a-38
(b), aggregated these terms. Tr. (Jan. 30, 2002), at 95-6. The resultant term of incarceration thus totaled seventeen (17) years.
The due process requirements concerning preliminary hearings are set forth in Morrissey v. Brewer, 408 U.S. 471, 497-8, 92 S.Ct. 2593,33 L.Ed.2d 484 (1972). Morrissey "state[s] that once an inmate is released on parole, he acquires a liberty interest in his continued freedom. CT Page 7999Morrissey, however, makes it clear that the benefits that inure as a result of that liberty interest cannot be taken away without the parolee's being informed of the alleged parole violation and being given a hearing at which he can rebut the allegations. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation." (Internal citations and quotation marks omitted.) Vincenzo v. Chairman, Board of Parole,64 Conn. App. 258, 262, 779 A.2d 843 (2001).
Morrissey held that "due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. Such an inquiry should be seen as in the nature of a `preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. . . . [D]ue process requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case[,] . . . someone such as a parole officer other than the one who has made the report of parole violations or has recommended revocation. . . .
"With respect to the preliminary hearing before this officer, the parolee should be given notice that the hearing will take place and that its purpose is to determine whether there is probable cause to believe he has committed a parole violation. The notice should state what parole violations have been alleged. At the hearing the parolee may appear and speak in his own behalf; he may bring letters, documents, or individuals who can give relevant information to the hearing officer. On request of the parolee, a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence. However, if the hearing officer determines that an informant would be subjected to risk of harm if his identity were disclosed, he need not be subjected to confrontation and cross-examination.
"The hearing officer shall have the duty of making a summary, or digest, of what occurs at the hearing in terms of the responses of the parolee and the substance of the documents or evidence given in support of parole revocation and of the parolee's position. Based on the information before him, the officer should determine whether there is probable cause to hold the parolee for the final decision of the parole board on revocation. Such a determination would be sufficient to warrant the parolee's continued detention and return to the state correctional institution pending the final decision. . . . [T]he decision maker should CT Page 8000 state the reasons for his determination and indicate the evidence he relied on but it should be remembered that this is not a final determination calling for formal findings of fact and conclusions of law. No interest would be served by formalism in this process; informality will not lessen the utility of this inquiry in reducing the risk of error." (Internal citations and quotation marks omitted.)Morrissey v. Brewer, 408 U.S. 471, 485-7.
Morrissey also sets forth the due process requirements that must be afforded at parole revocation hearings. "There must also be an opportunity for a hearing, if it is desired by the parolee, prior to the final decision on revocation by the parole authority. This hearing must be the basis for more than determining probable cause; it must lead to a final evaluation of any contested relevant facts and consideration of whether the facts as determined warrant revocation. The parolee must have an opportunity to be heard and to show, if he can, that he did not violate the conditions, or, if he did, that circumstances in mitigation suggest that the violation does not warrant revocation. The revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. A lapse of two months, as respondents suggest occurs in some cases, would not appear to be unreasonable.
". . . [T]he minimum requirements of due process . . . include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a neutral and detached hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. We emphasize there is no thought to equate this second stage of parole revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." (Internal citations and quotation marks omitted.) Id., at 487-9.
The evidence in this case shows that on October 2, 1997, the Board of Parole voted the petitioner to parole effective October 1, 1998. Pet'r. Ex. G. The petitioner was released to supervised parole on January 8, 1999, "subject to the conditions stipulated in a certain parole agreement." Resp't Ex. 1. One such condition, condition #12, was as follows: "Your release on Parole is based upon the conclusion of the Parole panel that there is a reasonable probability that you will live and remain at liberty without violating the law and that your release is CT Page 8001 not incompatible with the welfare of society. In the event that you engage in conduct in the future which renders this conclusion no longer valid, then your parole will be revoked or modified accordingly." Id.
On November 22, 1999, Parole Officer Barwikowski was contacted by a detective in the New Britain police department regarding a case under investigation in which two female minors had received through the mail letters containing veiled sexual suggestions. Id. "The police investigation lead to [the petitioner] as the primary suspect." Id. The letters were forwarded by the police to Officer Barwikowski, who then examined them and compared them to a letter sent by the petitioner to Officer Barwikowski in June of 1999. Id. Officer Barwikowski concluded from the comparison that the wording of the opening sentences was exactly the same and that the cursive writings strongly resembled each other.Id. "A case review was conducted with Parole Supervisor Elaine Pacheco. . . . Authorization to remand the subject to custody was granted." Id.
The Parole Violation Report, which is dated November 26, 1999, indicates that the remand was lodged on November 23, 1999, and that the petitioner was remanded back info custody on that date. Id. The Parole Violation Report also indicates that notice of the parole violation was presented on November 24, 1999, and that a preliminary hearing had been requested. Id. The petitioner refused to sign the notice of rights at the preliminary and final hearings, though the notice indicates that the petitioner requested a preliminary hearing and that he would be represented by Attorney Donald Freeman. Id. The notice of rights form was signed, however, by Officer Barwikowski and dated November 24, 1999. Id. The Notice of Parole Violation lists the charged parole violation and the evidence relied upon, and indicates that a final revocation in the petitioner's case had been scheduled for January 5, 2000. Id. In the Parole Violation Report, Officer Barwikowski and Supervisor Pacheco jointly requested that a Warrant for Re-Imprisonment be issued. Id. A Warrant for Re-Imprisonment was issued on December 3, 1999. Id.
"A preliminary hearing was conducted on December 6, 1999, . . . to determine whether or not there was probable cause to reincarcerate [the petitioner.]" Id. A summary of the preliminary hearing was prepared by Parole Officer Garry M. Sparks and lists the individuals who were present and the evidence that was introduced at the hearing. The summary indicates that the petitioner was present at the preliminary hearing, that he denied writing the two letters that were sent to the minors, that he suffered from Carnal Tunnel Syndrome and was unable to write at all, that his wife had written the letter dated June 1, 1999 and sent to Officer Barwikowski, and that he did not know either of the two minor females who had received the letters. Id. CT Page 8002
The decision submitted by Officer Sparks on December 7, 1999, determined that Officer Barwikowski had probable cause in this matter based on the fact that his "investigation revealed that one of the two under age females who had been sent a letter was in fact the upstairs neighbor to [the petitioner] in New Britain, Connecticut, and that [the] petitioner did have knowledge of the other under age female in question due to a common link within a church that they had both been involved in New Britain, . . . [and that all] of the letters which were presented at the preliminary hearing appeared to have identical handwriting characteristics." Id. The decision was approved by Parole Supervisor Elaine Pacheco on December 13, 1999. Id.
On January 11, 2000, a panel of the Parole Board held a Parole Revocation Hearing on the petitioner's case. Id. The panel voted to revoke the petitioner's parole, to not set a new parole hearing date in the petitioner's case, "and ordered the forfeiture of 1, 490 days statutory goodtime." Id; see also Pet'r Ex. H. Such forfeiture of statutory good time by the Board of Parole is specifically authorized by General Statutes § 54-128. Subsequent to being notified of the Parole Board's order, the Department of Correction, Records Department, "determined [that] 755 days were available to be forfeited[, though it was later determined that] in fact 857 days were available." Pet'r Ex. N, at 2. The petitioner's time sheet indicates that a posting made January 11, 2000, shows that 857 days of statutory good time were forfeited. Resp't Ex. 3, at 5. Since the forfeiture of 857 days of statutory good time, however, the petitioner has continued to earn good time and advance his release date. Id., at 5-6.
Based upon the foregoing, this Court finds that the due process requirements of Morrissey were comported with. The Board of Parole gave the petitioner all process he was due in both the preliminary hearing and the revocation hearing. The Court also finds that the Department of Correction has correctly aggregated the petitioner's sentences and posted the forfeited good time credits, and that there is no error in the estimation of the petitioner's release date arising from the Board of Parole ordered forfeiture of 857 days of statutory good time. The petition seeking habeas corpus relief, therefore, is denied.
 ___________________ BARRY, JUDGE TRIAL REFEREE